UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELLA VOSKIN and UMED MAKHSUMOV, <br><br> Plaintiffs, <br><br> v. <br><br> ZEUS NETWORKS, LLC; JOHN AND JANE DOES 1-10; and BUSINESS ENTITIES A-J, <br><br> Defendants. | Civil Case No. <br><br> COMPLAINT, JURY DEMAND AND DESIGNATION OF TRIAL COUNSEL |

Plaintiffs, ELLA VOSKIN and UMED MAKHSUMOV (hereafter, "Plaintiffs"), by and through their attorneys, Lurie Strupinsky, LLP, complaining of Defendants, sets forth and alleges as follows:

**PRELIMINARY STATEMENT**

1. This action addresses the wrongful use of these Plaintiffs' name, likeness, images, and video recording for a commercial purpose, and advertisement thereto, without authorization or consent. The use was in a defamatory and improper television show meant to, inter alia, cause harm to Plaintiffs' employer as an effort to provide support for a third-party, which is a party in default in a separate arbitration matter due to her ongoing, pervasive, and improper defamation.

2. Indeed, extensive battles have arisen by and between Plaintiff Ella Voskin's husband and the Plaintiffs' employer against Defendant Zeus Networks, LLC.

3. Now, and knowing that they did not sign any authorizations for the use of their names or images, unlike others who signed same, Plaintiffs saw themselves on a nationally distributed advertisement for the show – evidencing the bad faith and intention to cause harm.

4.     As a direct and proximate result of Defendant's actions, Plaintiffs' privacy has been violated causing them to suffer significant damages, including embarrassment and severe emotional distress.

5.     Astounded by Defendant's conduct, Plaintiffs' employer contacted Defendants, and even went so far as to seek injunctive relief in Court, asking them to cease use of images, likeness, and videos.

6.     Despite Plaintiffs' consistent attempts to maintain their privacy and protect their identity, Defendants have violated their privacy and their exclusive right to use of their likeness under New York law. For each of those reasons, Plaintiffs have been forced to commence this action.

## PARTIES

7.     Plaintiff Ella Voskin ("EV") is a citizen and resident of New York County, New York.

8.     Plaintiff Umed Makhsumov ("UM") is a resident of New York County, New York.

9.     Defendant The Zeus Networks, LLC ("Defendant") is a web-based television streaming station, organized in the State of Delaware, with a principal office in California, and which produces and displays its television programs nationally, including in New York and within the Southern District of New York.

10.    The fictitious parties identified herein are so designated because their identities are currently unknown and, upon review of discovery, may show that they are liable for the damages asserted herein and thus an amended complaint may be required.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this matter involves damages in excess of $75,000 and there exists complete diversity as to the parties as Plaintiffs are New York residents and, upon information and belief, Defendant is a Delaware Limited Liability Company with two members, one being a resident of California and the other being a resident of Texas.

12. This Court has personal jurisdiction over Defendant as it is a national entity that regularly advertises and displays its goods and services in the State of New York.

13. The Court further has jurisdiction over the Defendant as the acts and omission which cause the basis of this case was against New York residents who saw the unlawful use of their images in New York as same was directly advertised and promoted in New York, thus both specific and general jurisdiction apply.

14. Venue is proper in this Judicial District pursuant to is proper in this District under 28 U.S.C. § 1391 (b) and (c) because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

15. Plaintiff EV is the wife of Sergey Voskin, MD, the principal shareholder of My Goals Solutions, Inc.

16. Plaintiff UM is a manager for My Goals Solutions, Inc.

17. My Goals Solutions, Inc. (hereafter "Goals") provides administrative services for several plastic-surgery medical offices throughout the United States that do business under the registered trademark of GOALS AESTHETICS AND PLASTIC SURGERY® (the "Goals Trademark").

18. The Goals Trademark is the properly of NYC Medical Practice IP Holding Corp. which provides a license to Goals to use and sublicense the Goals Trademark.

19. Plaintiff Goals also owns trademarks on "DOUBLE BBL" (the "Double BBL Trademark") and "FLEXSCULPT" (the "Flexsculpt Trademark").

20. On or about May 1, 2023, Goals was approached by representatives of a business which was identified as The Zeus Network to work on a production for their internet-based television station.

21. In the process, these representatives sought to bring their talent, Ms. Goldie Martin a/k/a "Rollie Pollie," to a facility managed by Goals to have plastic surgeries performed on her.

22. Indeed, Rollie Pollie is a known reality television personality who has a reputation for brash and sexual content, and an identity of a person with a high body mass index ("BMI").

23. Defendant's representatives promised that the television production would be entirely positive, would benefit Goals' and Dr. Voskin's reputations by putting them in a positive light, and that the sole consideration for the services to be provided by Goals was the positive advertisements and representations stemming from the production.

24. Goals notified Defendants, and Defendants contractually accepted, the obligation to allow Plaintiffs to review any and all footage before public display of same to ensure that they were not shown in a negative or demeaning manner as can be done with editing used in "reality television."

25. Further, due to the concerns of Goals and Dr. Voskin of the filming of other patients and the risk of violating HIPAA, they required that they be provided an opportunity to review all footage to ensure no other patients were in the videos. Same as the request concerning the risk of negative portrayal discussed above, Defendants agreed.

26. With these promises made, Goals agreed to allow the filming of their location(s), arranged for two surgeries for Ms. Martin, and allowed a limited use of the three trademarks.

27. Defendants' agents acted in an expedited manner, providing draft agreements (which were rejected) to be signed by Goals, and making promises, which, upon information and belief, they did not have authority to promise.

28. The first procedure was performed on May 15, 2023 at Goals' affiliated medical practice in Atlanta, Georgia. Same occurred without issue.

29. The second procedure was performed on July 20, 2023 at Goals' affiliated medical practice in Los Angeles, California.

30. In contrast to the first procedure, Ms. Martin's conduct thereafter was beyond reproach.

31. Subsequent to her procedure, she made innumerable threats to Goals and Plaintiff EV, Goals' staff, and the staff of the medical practice, was abusive and otherwise acted in a wrongful manner.

32. Ms. Martin also made multiple defamatory claims at that time, most relevant, she falsely alleged that Goals, its doctors, and others were "unprofessional."

33. Thereafter, Ms. Martin began and continued a campaign of harassment, defamation, and used her sizable social media following in furtherance of same.

34. Eventually, in February of 2024, Ms. Martin accused Goals, falsely, of killing patients and calling Goals "death people" which resulted in Goals filing for arbitration (pursuant to its agreements with Ms. Martin) to seek damages for defamation and defamation per se.

35. Service was made on Ms. Martin on March 16, 2024.

36. Thereafter, on March 24, 2024, EV and UM became aware that Defendant had created a video promotional trailer and had "tagged" Plaintiff Goals in it on social media.

37. Upon review of the video, much was without issue – until the end!. Indeed, it is clearly heard on video when Ms. Martin said that Goals and its staff and employees (including Plaintiffs) are "unprofessional as f*ck" before continuing with threats to Plaintiff EV in saying "b*tch, I'll make you lose this whole mother*cking building, b*tch."

38. Plaintiffs also noticed that there were people in shots on the video that appeared, or possibly were, patients. All of this is just in the promo video, and concerned with what might be on the rest of the planned show, the Plaintiffs had to act.

39. Defendant failed to provide Goals an opportunity to review the footage before its publication to allow Goals to ensure that no patients were shown on the video as promised.

40. Defendant failed to provide Goals an opportunity to review the footage before its publication to ensure that it was not being used as a vehicle to defame or disparage Goals or, based upon her most recent conduct, as a vehicle for Ms. Martin to defame and/or disparage Goals, its staff, or the Plaintiffs herein.

41. From March 26, 2024 through April 10, 2024, Goals attempted to obtain restraints against Defendant for its breaches in the Supreme Court for the State of New York located in New York County. Despite the harm, the New York State Courts refused to grant an injunction on the basis of a release – even on behalf of Goals, which did not have a signed agreement with Defendant (thus conflating Dr. Voskin personally and as a shareholder – with the Goals corporation).

42. Notwithstanding, and while the New York State action was pending, Defendant published a second video promotion of their television show on or about April 7 or 8, 2024.

43. This second trailer was seen by the Plaintiffs in New York as it was published to Youtube, Instagram, and other national (and international) systems and was targeted towards any and all potential viewers and for the intention of obtaining subscribers to Defendant to watch the show and earn funds.

44. In review of the second trailer of early April, Plaintiffs herein saw that they were both used in this trailer, clearly, using their faces, voices, bodies, and names.

45. The second video continues to defame and disparage Goals and Dr. Voskin.

46. Neither Plaintiff herein consented to their names, images, voices, or otherwise being used by Defendant, and did not sign any documents permitting same.

47. Since this happened, both Plaintiffs have suffered harm and anxiety.

48. Plaintiff EV, upon seeing her face and voice on this video, being used to further a defamatory television show designed to cause harm to her and her husband, has had difficulty sleeping and increased anxiety.

49. Plaintiff UM, upon seeing his face and voice on this video, and knowing that it is being used to further a defamatory program against his employer, has suffered anxiety and distress and concern that same will impact his livelihood and employment.

50. Indeed, since the posting of this video, Goals and its staff, including Plaintiffs herein, have appeared on several social media "influencer's" pages with "comments" and "reactions" which has included ridicule against Goals and these Plaintiffs, among others.

51. Therefore, as a result of the conduct of Defendant, these Plaintiffs have been harmed and damaged, both monetarily and otherwise.

**<u>FIRST CAUSE OF ACTION</u>**
(NYCRL – N.Y. Civ. Rights Law § 51)
(All Plaintiffs v. Defendants)

52. Plaintiffs repeat, reiterate, and re-allege each allegation set forth above with the same force and effect as though fully set forth herein.

53. Pursuant to the law, "Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait, picture or voice, to prevent and restrain the use thereof". N.Y. Civ. Rights. L. 51.

54. The law continues that any such person identified above "may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages."

55. Pursuant to N.Y. Civ. Rights L. 50, "person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor."

56. Defendants knew of the obligation to obtain consent because they sought and obtained same from others in connection with this same defamatory television show.

57. Therefore, Defendant knowingly used the names, images, and likeness without permission and are using same for advertising purposes and trade and thus have violated the law.

58. Indeed, Defendants further knew because they are a television/entertainment entity and exist in California which has laws as stringent if not more stringent than New York with respect to the misappropriation of the use and likeness of individuals without authorization.

59. As a proximate result of Defendant's wrongful conduct, Plaintiff has been irreparably harmed, suffered damage, and Defendant has profited in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
(Defamation and Defamation per se)
(EV v. Defendants)

60. Plaintiffs repeat, reiterate, and re-allege each allegation set forth above with the same force and effect as though fully set forth herein.

61. Defendant has used its platform to act as a republication of false and defamatory statements.

62. In the first video of March 25, 2024, Martin states to EV that she is unprofessional and threatens to take the whole building from her (despite her not owning the subject property).

63. The accusation of unprofessionalism, and published by Ms. Martin, and republished by Defendants, is false, known to be false, and targets and otherwise is meant to malign EV and injure her trade, business and/or profession.

64. As a result, Defendant has republished per se defamation and is liable for same.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor, and against Defendants, jointly and severally, as follows:

A. An award of compensatory damages;

B. An award of punitive damages;

C. An award of legal fees and costs of suit;

D.  An award of pre-judgment and post-judgment interest;

E.  Other such relief as the Court deems just and reasonable.

## JURY TRIAL DEMAND

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff hereby demand a jury trial on triable issues raised by this complaint.

Dated: April 16, 2024

                                                  Respectfully submitted,

                                                  __/s/ Joshua M. Lurie____
                                                  Joshua M. Lurie, Esq. (JL7272)
                                                  Lurie Strupinsky, LLP
                                                  15 Warren Street, Suite 36,
                                                  Hackensack, New Jersey 07601
                                                  Ph. (201) 518-9999
                                                  Fax. (201) 479-9955
                                                  jmlurie@luriestrupinsky.com